IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-81

 No. 303A20

 Filed 13 August 2021

 ESTATE OF MELVIN JOSEPH LONG, by and through MARLA HUDSON LONG,
 Administratrix

 v.
 JAMES D. FOWLER, Individually, DAVID A. MATTHEWS, Individually, DENNIS
 F. KINSLER, Individually, ROBERT J. BURNS, Individually, MICHAEL T.
 VANCOUR, Individually, and MICHAEL S. SCARBOROUGH, Individually

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

 the Court of Appeals, 270 N.C. App. 241 (2020), reversing an order entered on 3 May

 2019 by Judge Josephine K. Davis in Superior Court, Person County, and remanding

 to the trial court. Heard in the Supreme Court on 18 May 2021.

 Hardison & Cochran, PLLC, by John Paul Godwin; and Sanford Thompson,
 PLLC, by Sanford Thompson IV, for plaintiff-appellee.

 Parker Poe Adams & Bernstein LLP, by Jonathan E. Hall and Patrick M.
 Meacham; and Joshua H. Stein, Attorney General, by Melissa K. Walker,
 Assistant Attorney General, Shannon Cassell, Civil Bureau Chief, and Sarah
 G. Boyce, Deputy Solicitor General, for defendant-appellants.

 EARLS, Justice.

¶1 This case raises the question of whether the estate of an individual killed by

 the allegedly negligent acts of State employees can proceed in state court to assert

 wrongful death claims against those employees in their individual capacities or

 whether such a suit is barred by the doctrine of sovereign immunity. Following our
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 precedent, sovereign immunity does not apply to suits against state employees in

 their individual capacities. We therefore hold that the trial court erred in dismissing

 the complaint on those grounds.

¶2 The tragic event giving rise to plaintiff’s claims occurred on the morning of 20

 January 2017, when Melvin Joseph Long was working to reconnect a trailer-mounted

 chiller on the campus of North Carolina State University (NCSU). To do so, he needed

 to remove metal flanges that capped two water pipes on the chiller. However,

 unbeknownst to Mr. Long, the pipes had become filled with pressurized gas after

 water in the pipes froze and the pipes cracked. As he began to loosen one of the metal

 flanges, it shot off the water pipe and hit him in the face with great force. Mr. Long

 died from his injuries five days later, on 25 January 2017.

¶3 Following his death, Mr. Long’s estate brought the present action against

 James D. Fowler, David A. Matthews, Dennis F. Kinsler, Robert J. Burns, Michael T.

 Vancour, and Michael S. Scarborough (defendants), NCSU employees who had

 worked on the chiller during the months before Mr. Long’s injury and, according to

 plaintiff’s allegations, caused his injury. In addition to arguing that the complaint

 failed to allege substantive elements of Mr. Long’s claims, defendants have asked us

 to hold that Mr. Long’s claims are brought against defendants in their official

 capacities or, in the alternative, that claims such as those brought by Mr. Long are

 necessarily claims against the State that cannot be brought against defendants in

 -2-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 their individual capacities. Doing so would require us to overturn several decades of

 this Court’s precedent establishing that claims brought against State employees in

 their individual capacities are not subject to the doctrine of sovereign immunity.

 However, we are constrained to promote the “stability in the law and uniformity in

 its application” which may only be achieved through “respect for the opinions of our

 predecessors.” Wiles v. Welparnel Constr. Co., 295 N.C. 81, 85 (1978).

¶4 The tie between injury and remedy is so fundamental to our law that it is

 enshrined in the first article of our state constitution—“every person for an injury

 done him in his lands, goods, person, or reputation shall have remedy by due course

 of law.” N.C. Const. art. I, § 18. Hewing close to our precedent in this case maintains

 the general principle that the law provides remedies to injured persons. Cf. Wirth v.

 Bracey, 258 N.C. 505, 508 (1963) (“The obvious intention of the General Assembly in

 enacting the Tort Claims Act was to enlarge the rights and remedies of a person

 injured by the actionable negligence of an employee of a State agency while acting in

 the course of his employment.”). By preserving remedies in tort, we “deter certain

 kinds of conduct by imposing liability when that conduct causes harm.” Haarhuis v.

 Cheek, 255 N.C. App. 471, 480 (2017) (quoting Dan B. Dobbs, Paul T. Hayden & Ellen

 M. Bublick, The Law of Torts § 14 (2d ed. 2011)). As we have previously stated,

 “[t]here can be little doubt that immunity fosters neglect and breeds irresponsibility,

 while liability promotes care and caution.” Rabon v. Rowan Mem’l Hosp., Inc., 269

 -3-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 N.C. 1, 13 (1967). Defendants in this case were sued in their individual capacities,

 and the complaint adequately stated claims for the tort relief sought by Mr. Long’s

 estate. As a result, the trial court erroneously granted defendant’s motion to dismiss,

 and we affirm the decision of the Court of Appeals reversing that order.

 I. Background

¶5 Since this case comes to us on the trial court’s order granting a motion to

 dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules

 of Civil Procedure, we accept the allegations in the complaint as true. Corwin v.

 British Am. Tobacco PLC, 371 N.C. 605, 611 (2018) (Rule 12(b)(1)); Parker v. Town of

 Erwin, 243 N.C. App. 84, 96 (2015) (Rule 12(b)(2)); Bridges v. Parrish, 366 N.C. 539,

 541 (2013) (Rule 12(b)(6)).

¶6 The Complaint alleges that in December 2016, NCSU owned, operated, and

 used a large, trailer-mounted chiller. Around 21 December 2016, one or more of

 defendants, pursuant to a work order completed during the course of their

 employment, shut the chiller down, disconnecting its power and water sources. At

 that time, they drained water from the chiller. However, two signs on the chiller

 contained a warning indicating that it was “not possible to drain all water” from the

 chiller and that the chiller “must be drained and refilled with” antifreeze solution

 “[f]or freeze protection during shut-down.” Similarly, the chiller’s operating manual

 instructed that the chiller should be filled with antifreeze to “prevent freeze-up

 -4-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 damage to the cooler tubes.” Defendants did not put antifreeze into the chiller.

¶7 Almost two weeks later, on 3 January 2017, one or more defendants tightly

 secured heavy metal flanges, weighing approximately 13.1 pounds, to the ends of the

 chiller’s water pipes to cap the pipes. A few days after that, the area experienced a

 hard freeze, with temperatures falling as low as nine degrees Fahrenheit. Water

 remaining in the pipes froze and ruptured the pipes, which caused the pipes to fill

 with a pressurized refrigerant gas. The gas built up in the pipes behind the metal

 flanges, and the pipes became pressurized.

¶8 On 20 January 2017, Mr. Long attempted to loosen the flanges on the chiller

 pipes so that the chiller could be reconnected. As he began doing so, one of the flanges

 flew off the end of the pipe, propelled by the pressurized refrigerant gas, and struck

 him in the face. The flange knocked off part of Mr. Long’s skull, and he died five days

 later.

¶9 Marla Hudson Long, Mr. Long’s wife and the personal representative of Mr.

 Long’s estate, filed the instant action in Superior Court, Person County, on 13

 November 2018. On 19 February 2019, defendants filed a motion to dismiss pursuant

 to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure,

 arguing that the trial court lacked jurisdiction over the subject matter and over the

 person of defendants and that the complaint failed to state a claim upon which relief

 could be granted. On 21 February 2019, defendants filed their answer and defenses.

 -5-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 Following a hearing on 8 April 2019, the trial court granted defendants’ motion to

 dismiss in an order filed 3 May 2019.

¶ 10 Following the trial court’s order granting defendants’ motion to dismiss, the

 estate appealed to the Court of Appeals. The Court of Appeals reversed the trial

 court’s order in a divided decision, holding that defendants, employees of NCSU, had

 been sued in their individual capacities and were therefore not entitled to the defense

 of sovereign immunity and that the complaint had adequately stated claims for

 negligence and gross negligence. Estate of Long v. Fowler, 270 N.C. App. 241, 250,

 252–53 (2020). The dissent, on the other hand, would have held that the complaint

 failed to adequately plead negligence or gross negligence and that defendants were

 entitled to sovereign immunity because the allegedly negligent actions occurred

 within the scope of their employment as public employees. Id. at 254–55, 257 (Tyson,

 J., dissenting).

¶ 11 Before this Court, defendants assert that they are being sued in their official

 capacities and that the suit is actually one against NCSU, which is entitled to

 sovereign immunity. They also argue that the complaint fails to state claims for

 negligence and gross negligence because it does not allege facts establishing

 proximate cause, and that the complaint fails to adequately allege claims for punitive

 damages. We reject these arguments and affirm the Court of Appeals. A suit against

 State employees is not subject to the doctrine of sovereign immunity when brought

 -6-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 against the employees in their individual capacities. The complaint in this case

 indicates that it is brought against defendants in their individual capacities.

 Moreover, the complaint adequately alleges that Mr. Long’s injury was proximately

 caused by defendants’ conduct and adequately alleges that defendants acted with the

 requisite willful or wanton conduct to support a claim for punitive damages.

 II. Analysis

 A. Sovereign immunity

¶ 12 When reviewing a trial court’s order granting a motion to dismiss pursuant to

 Rule 12(b)(1), “we apply de novo review, accepting the allegations in the complaint as

 true and viewing them in the light most favorable to the non-moving party.” Corwin,

 371 N.C. at 611.1 We review de novo “[q]uestions of law regarding the applicability of

 sovereign or governmental immunity.” Wray v. City of Greensboro, 370 N.C. 41, 47

 (2017) (alteration in original) (quoting Irving v. Charlotte-Mecklenburg Bd. of Educ.,

 368 N.C. 609, 611 (2016)).

¶ 13 Defendants are not entitled to the defense of sovereign immunity merely

 because they are State employees, even when the tortious conduct is alleged to have

 1 As was the case in Teachy v. Coble Dairies, Inc., we need not decide whether a motion

 to dismiss on the basis of sovereign immunity is properly designated as a Rule 12(b)(1) motion
 or a Rule 12(b)(2) motion. See Teachy v. Coble Dairies, Inc., 306 N.C. 324, 328 (1982) (stating
 that “the distinction becomes crucial in North Carolina because” a denial of a Rule 12(b)(2)
 motion is immediately appealable by statute while a denial of a Rule 12(b)(1) motion is not).
 Here, the motion to dismiss was granted, and neither Ms. Long’s appeal to the Court of
 Appeals nor defendants’ appeal to this Court was an interlocutory appeal.

 -7-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

occurred during the scope of their employment. Miller v. Jones, 224 N.C. 783, 787

(1945) (“The mere fact that a person charged with negligence is an employee of others

to whom immunity from liability is extended on grounds of public policy does not

thereby excuse him from liability for negligence in the manner in which his duties

are performed, or for performing a lawful act in an unlawful manner.”); see also

Isenhour v. Hutto, 350 N.C. 601, 609 (1999) (stating that it is irrelevant whether

allegations of tortious conduct relate to a public employee defendant’s official duties

“[b]ecause public employees are individually liable for negligence in the performance

of their duties”); Meyer v. Walls, 347 N.C. 97, 108 (1997) (“Therefore, the fact that

defendants may have been acting as agents of the State does not preclude a claim

against defendants.”).2 However, as defendants correctly note, a suit against a State

employee in that employee’s official capacity is a suit against the State and therefore

subject to the doctrine of sovereign immunity. See Isenhour, 350 N.C. at 608 (“A suit

against a defendant in his individual capacity means that the plaintiff seeks recovery

from the defendant directly; a suit against a defendant in his official capacity means

 2 It is inconsistent with a fair reading of any of our precedents establishing that
sovereign immunity is unavailable to a State employee sued in his or her individual capacity
to suggest that the law is “less than clear,” on this point. See, e.g., Mullis, v. Sechrest, 347
N.C. 548, 551 (1998) (“[T]he threshold issue to be determined” when evaluating what
immunity defense are available “is whether [the] defendant [ ] is being sued in his official
capacity, individual capacity, or both”); see also Trey Allen, Local Government Immunity to
Lawsuits in North Carolina, (Inst. of Gov’t, Univ. of N.C. at Chapel Hill, Oct. 2018, at 5–6)
(“Under current case law, governmental immunity is not a defense to tort claims alleged
against officers or employees in their individual capacities.”).

 -8-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 that the plaintiff seeks recovery from the entity of which the public servant defendant

 is an agent.” (quoting Meyer, 347 N.C. at 110)). As a result, as defendants

 acknowledge, the threshold question in this case is whether defendants are being

 sued in their individual or in their official capacities. 3

 B. Individual or official capacity

¶ 14 It is abundantly clear from the complaint that defendants are being sued in

 their individual capacities. “It is a simple matter for attorneys to clarify the capacity

 in which a defendant is being sued. Pleadings should indicate in the caption the

 3 The dissent wrongly posits that “the distinction between official and individual
 capacity conflicts with the concept of waiver of the State’s sovereign immunity.” In fact, the
 distinction between an “official” and “individual capacity” suit has been recognized as
 determinative when examining assertions of sovereign immunity by both the State of North
 Carolina under State law, as detailed above, and in claims arising under federal law. As we
 explained in Corum,

 [S]tate governmental officials can be sued in their individual capacities for
 damages under [42 U.S.C. §] 1983. . . . [U]nlike a suit against a state official in
 his official capacity, which is basically a suit against the official office and
 therefore against the State itself, a suit against an individual who happens to
 be a governmental official but is not acting in his official capacity is not
 imputed to the State. Such individuals are sued as individuals, not as
 governmental employees. Presumably, they are personally liable for payment
 of any damages awarded.

 Corum v. Univ. of N. Carolina Through Bd. of Governors, 330 N.C. 761, 772 (1992); cf. Lewis
 v. Clarke, 137 S. Ct. 1285, 1291 (2017) (“The identity of the real party in interest dictates
 what immunities may be available. Defendants in an official-capacity action may assert
 sovereign immunity. . . . But sovereign immunity does not erect a barrier against suits to
 impose individual and personal liability.”) (internal quotation marks omitted). Recognizing
 the distinction between official and individual capacity claims in no way “conflicts with the
 concept of waiver of the State’s sovereign immunity” because there is no sovereign immunity
 to assert when the defendant is sued in his or her individual capacity.

 -9-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 capacity in which a plaintiff intends to hold a defendant liable.” Mullis v. Sechrest,

 347 N.C. 548, 554 (1998). Here, the caption of the complaint lists each named

 defendant followed by “Individually” after each name. Moreover, the first line of the

 complaint indicates that the plaintiff is “complaining of the defendants in their

 individual capacities, jointly and severally.” The prayer for relief seeks relief against

 defendants “jointly and/or severally” after “having stated claims against the

 defendants, individually and jointly.” This is further indication that the complaint

 states claims against defendants in their individual capacities. See id. (“Finally, in

 the prayer for relief, plaintiffs should indicate whether they seek to recover damages

 from the defendant individually or as an agent of the governmental entity.”).

¶ 15 Importantly, the prayer for relief does not seek injunctive relief implicating the

 exercise of governmental power—it instead seeks only compensatory and punitive

 damages against the individual defendants. See id. at 552 (discussing the distinction

 between official and individual capacity claims and noting that “seek[ing] an

 injunction requiring the defendant to take an action involving the exercise of a

 governmental power” is indicative of an official capacity suit (quoting Meyer, 347 N.C.

 at 110)). When, as in the instant case, the complaint seeks monetary damages, the

 claim “is an individual-capacity claim” if “the complaint indicates that the damages

 are sought . . . from the pocket of the individual defendant.” Meyer, 347 N.C. at 110

 (quoting Anita R. Brown-Graham & Jeffrey S. Koeze, Immunity from Personal

 -10-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 Liability under State Law for Public Officials and Employees: An Update, Loc. Gov’t

 L. Bull. 67 (Inst. of Gov’t, Univ. of N.C. at Chapel Hill), Apr. 1995, at 7).

¶ 16 Defendants have argued that they are being sued in their official capacities,

 and not in their individual capacities, because their allegedly tortious conduct was

 performed in the scope and course of their employment. However,

 [w]hether the allegations relate to actions outside the scope
 of defendant’s official duties is not relevant in determining
 whether the defendant is being sued in his or her official or
 individual capacity. To hold otherwise would contradict
 North Carolina Supreme Court cases that have held or
 stated that public employees may be held individually
 liable for mere negligence in the performance of their
 duties.

 Meyer, 347 N.C. at 111.

¶ 17 Defendants have also argued that “the course of proceedings” indicates that

 the suit is brought against defendants in their official capacities, not in their

 individual capacities. However, we need not look to “the course of proceedings” when

 “the complaint . . . clearly specif[ies] whether the defendants are being sued in their

 individual or official capacities.” Mullis, 347 N.C. at 552 (quoting Kentucky v.

 Graham, 473 U.S. 159, 167 n.14 (1985)). As indicated above, the complaint in this

 case clearly indicates that defendants are being sued in their individual capacities.

 There is no ambiguity in the complaint which would require us to look to the course

 of proceedings to determine in what capacity defendants are being sued.

¶ 18 Essentially, defendants assert that this suit is one against the State because

 -11-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 Ms. Long has also sued NCSU in the Industrial Commission. However, “the fact that

 the Tort Claims Act provides for subject matter jurisdiction in the Industrial

 Commission over a negligence claim against the State does not preclude a claim

 against defendants in Superior Court.” Meyer, 347 N.C. at 108. “A plaintiff may

 maintain both a suit against a state agency in the Industrial Commission under the

 Tort Claims Act and a suit against the negligent agent or employee in the General

 Court of Justice for common-law negligence.” Id. (citing Wirth, 258 N.C. at 507–08).

¶ 19 Finally, defendants asserted at oral argument that regardless of whether the

 complaint attempts to state claims against defendants in their individual capacities,

 the General Assembly has “taken off the table” suits against individual employees for

 conduct within the scope of their employment. Defendants assert that the suit is

 actually brought against them in their official capacities because the General

 Assembly has passed a law of general applicability which causes the State to pay

 judgments in actions brought against State employees. In defendants’ view, any other

 conclusion would “subvert the General Assembly’s efforts to route these kinds of tort

 claims to the Industrial Commission.” We can divine no such intent from the statutes

 that defendants cite.

¶ 20 By statute, the General Assembly has provided that “upon request of an

 employee or former employee, the State may provide for the defense of any civil or

 criminal action or proceeding brought against him in his official or individual

 -12-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 capacity, or both, on account of an act done or omission made in the scope and course

 of his employment as a State employee.” N.C.G.S. § 143-300.3 (2019). In such a case,

 the State has set out its intention to “pay (i) a final judgment awarded in a court of

 competent jurisdiction against a State employee or (ii) the amount due under a

 settlement of the action under this section.” N.C.G.S. § 143-300.6(a) (2019).

 Defendants argue that these two statutes indicate that an action against a State

 employee which the State chooses to defend is in actuality an action against the State

 entitled to sovereign immunity and required to be brought in the Industrial

 Commission pursuant to the State Tort Claims Act. See N.C.G.S. § 143-291(a) (2019)

 (“The North Carolina Industrial Commission is hereby constituted a court for the

 purpose of hearing and passing upon tort claims against the State Board of

 Education, the Board of Transportation, and all other departments, institutions and

 agencies of the State.”).

¶ 21 The interpretation urged by defendants is belied by the text of the statutes

 themselves. The provision permitting the payment of judgments and settlements

 against State employees expressly provides that “[t]his section does not waive the

 sovereign immunity of the State with respect to any claim.” N.C.G.S. § 143-300.6(a).

 If, as defendants claim, actions against State employees which the State has elected

 to defend are entitled to sovereign immunity protections and may only proceed in the

 Industrial Commission, there would have been no need for the General Assembly to

 -13-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 specify that judgments or settlements paid in that context are not a waiver of the

 State’s sovereign immunity. If defendants were correct, there would be no danger that

 the payment of a judgment or settlement in such an action could constitute a waiver

 of the State’s sovereign immunity—the payment would have been made in an

 Industrial Commission action pursuant to the State’s limited waiver of immunity in

 the State Tort Claims Act. The General Assembly would have had no reason to specify

 that the payment of a judgment or settlement on behalf of a State employee “does not

 waive the sovereign immunity of the State with respect to any claim.” See N.C.G.S.

 § 143-300.6(a). Adopting defendants’ argument would necessitate the conclusion that

 section 143-300.6 contains superfluous language—this conclusion is fatal to their

 claim. See State v. Morgan, 372 N.C. 609, 614 (2019) (“[A] statute may not be

 interpreted ‘in a manner which would render any of its words superfluous.’ ” (quoting

 State v. Coffey, 336 N.C. 412, 417 (1994))).

¶ 22 More broadly, the statutory scheme referenced by defendants would not exist

 if actions against State employees in their individual capacities were subject to the

 doctrine of sovereign immunity. “[T]he Tort Claims Act applies only to actions against

 state departments, institutions, and agencies and does not apply to claims against

 officers, employees, involuntary servants, and agents of the State.” Meyer, 347 N.C.

 at 107. As a result, no action could be maintained in the Industrial Commission

 against the individual defendants being sued in the instant action. However, section

 -14-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 143-300.6 of our General Statutes contemplates the payment by the State of “a final

 judgment awarded in a court of competent jurisdiction against a State employee.”

 N.C.G.S. § 143-300.6(a). If these actions could only be brought in the Industrial

 Commission, which has no jurisdiction over the individual defendants, there would

 have been no need for the General Assembly to provide for the payment of judgments

 against State employees in any “court of competent jurisdiction”—no such judgments

 would exist. Id. If the General Assembly had intended that tort claims against State

 employees be decided in the Industrial Commission, it would not have written a

 statute that specifically allowed for the State to pay “a final judgment awarded in a

 court of competent jurisdiction against a State employee.” Id.

¶ 23 Two more considerations guide our decision on this point. First, adopting

 defendants’ argument would require overruling our prior decisions holding that

 actions against public employees are not subject to the doctrine of sovereign

 immunity—decisions issued both before and after the enactment of statutory

 provisions providing for defense by the State of actions against State employees and

 the payment by the State of judgments against State employees. See Wirth, 258 N.C.

 at 508 (stating in 1963 that the Tort Claims Act permits a suit against a state agency

 in the Industrial Commission without abrogating a plaintiff’s right to bring an action

 against the employee of such an agency, who remains “personally liable for his own

 actionable negligence”); Meyer, 347 N.C. at 108 (“Furthermore, the fact that the Tort

 -15-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 Claims Act provides for subject matter jurisdiction in the Industrial Commission over

 a negligence claim against the State does not preclude a claim against defendants in

 Superior Court.”).

¶ 24 Second, we note that the State’s decision to defend a State employee for actions

 in the scope and course of employment is discretionary. See N.C.G.S. § 143-300.3. We

 decline to adopt an interpretation of our statutes which would create serious notice

 problems for plaintiffs who cannot know whether the State will choose to defend an

 action against a particular employee, which defendants assert would trigger

 sovereign immunity and preclude a remedy in superior court. Even assuming that

 defendants’ interpretation was reasonable, we would avoid it. See In re Arthur, 291

 N.C. 640, 642 (1977) (“Where one of two reasonable constructions will raise a serious

 constitutional question, the construction which avoids this question should be

 adopted.”). For all of these reasons, we conclude that the trial court erred by granting

 defendants’ motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(2) on the basis of

 defendants’ arguments pertaining to sovereign immunity.

 C. Failure to state a claim

¶ 25 “Our review of the grant of a motion to dismiss under Rule 12(b)(6) of the North

 Carolina Rules of Civil Procedure is de novo.” Bridges, 366 N.C. at 541. Our task is

 to determine “whether the allegations of the complaint, if treated as true, are

 sufficient to state a claim upon which relief can be granted under some legal theory.”

 -16-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 Id. (quoting Coley v. State, 360 N.C. 493, 494–95 (2006)). Defendants argue that Mr.

 Long failed to allege that his injury was a reasonably foreseeable result of their

 conduct and that the complaint therefore did not sufficiently establish the element of

 proximate cause. Defendants also argue that the complaint did not adequately allege

 the willful or wanton conduct needed to support a claim for punitive damages. We

 reject both arguments and hold that the trial court erred in granting defendants’

 motion to dismiss pursuant to Rule 12(b)(6).

 1. Proximate cause

¶ 26 Defendants argue that the complaint fails to allege that Mr. Long’s injury was

 a reasonably foreseeable consequence of defendants’ actions. At oral argument,

 defendants asserted that there is nothing in the complaint suggesting that they

 should have known that their conduct could possibly result in the chiller freezing up

 and pressurizing, thereby causing injury. We conclude that the complaint sufficiently

 alleges that defendants’ actions proximately caused Mr. Long’s injury.

¶ 27 In a common law negligence claim, “[i]t is sufficient if by the exercise of

 reasonable care the defendant might have foreseen that some injury would result

 from his conduct or that consequences of a generally injurious nature might have

 been expected. Usually the question of foreseeability is one for the jury.” Fussell v.

 N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226 (2010) (alteration in original)

 (quoting Slaughter v. Slaughter, 264 N.C. 732, 735 (1965)).

 -17-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

¶ 28 Defendants argue that the complaint “failed to include requisite allegations of

 fact that a reasonably foreseeable consequence of defendants’ alleged failure to

 properly drain water from the chiller unit’s pipes would be a chemical reaction that

 could lead to a pressurized explosion of sufficient force to propel a 13-pound metal

 flange at a person’s head.” However, there is nothing surprising about the fact that

 water left in pipes that are subjected to freezing temperatures may freeze and cause

 the pipes to burst. Defendants’ description of this phenomenon as “a chemical

 reaction” does not make the result any less foreseeable. This unsurprising fact is

 underscored by two signs on the outside of the chiller that read

 FREEZE WARNING!
 It is not possible to drain
 all water from this heat
 exchanger! For freeze
 protection during shut-
 down, exchanger must
 be drained and refilled
 with 5 gals Glycol min.
 80GX504736-
 TRAPPED WATER!

¶ 29 By comparison, the work order attached to the complaint indicates that

 defendants were instructed to “drain and secure carrier chiller for relocation.” Given

 that the work order instructed defendants to “drain” the chiller, and that the notice

 on the chiller specified that it could not be completely drained and it “must be drained

 and refilled” with antifreeze, defendants were on notice that a necessary part of the

 task they were instructed to complete was ensuring that antifreeze was added to the

 -18-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 chiller. As a result, it is irrelevant that the work order did not specifically instruct

 defendants to “winterize” the chiller—the complaint alleges sufficient facts that, if

 true, indicate defendants were on notice that they must refill the chiller with

 antifreeze after draining it. The work order did not need to set out every step required

 to execute the task properly and safely.

¶ 30 The complaint alleges that each defendant improperly drained water from the

 chiller, leaving water inside. It alleges that notices on the chiller warned that it was

 not possible to drain all water from the chiller and that the chiller must be filled with

 antifreeze to prevent freezing. The complaint alleges that defendants failed to fill the

 chiller with antifreeze. The complaint alleges that as a result of this failure, the pipes

 froze and ruptured. The complaint further alleges that each defendant knew or

 should have known that this could happen and that the pipes would become

 pressurized as a result. Finally, the complaint alleges that the pressure in the pipes

 caused one of the 13-pound metal flanges that defendants allegedly placed on the

 ends of the pipes to fly off, resulting in injuries that caused Mr. Long’s death.

¶ 31 The complaint adequately alleged that defendants either knew or should have

 known that their conduct would cause damage to the chiller that might leave it in a

 dangerous state, that defendants in fact caused the damage through their actions,

 and that injury in fact resulted. This was sufficient, under principles of notice

 pleading, to “give the substantive elements of a legally recognized claim.” Estate of

 -19-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 Savino v. Charlotte-Mecklenburg Hosp. Auth., 375 N.C. 288, 297 (2020) (quoting

 Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 205 (1988)).

 “[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the

 exercise of good common sense in the consideration of the evidence of each particular

 case.” McAllister v. Khie Sem Ha, 347 N.C. 638, 645 (1998) (alteration in original)

 (quoting Williams v. Carolina Power & Light Co., 296 N.C. 400, 403 (1979)). At this

 stage of the trial, dismissal is not warranted and plaintiff is entitled to proceed in the

 litigation which will determine whether the evidence bears out the allegations of

 proximate cause contained in the complaint.

 2. Punitive damages

¶ 32 As an initial matter, we need to be clear about the statutory standards for

 recovery of punitive damages applicable here. See N.C.G.S. § 1D-15 (2019). There is

 some suggestion in the briefs that for purposes of punitive damages, gross negligence

 is equivalent to willful or wanton conduct. However, our law now provides that

 “[p]unitive damages may be awarded only if the claimant proves” that either fraud,

 malice, or “[w]illful or wanton conduct” occurred and related to the injury. N.C.G.S.

 § 1D-15(a). As used here, “ ‘[w]illful or wanton conduct’ means more than gross

 negligence” and is defined as “the conscious and intentional disregard of and

 indifference to the rights and safety of others, which the defendant knows or should

 know is reasonably likely to result in injury, damage, or other harm.” N.C.G.S. § 1D-

 -20-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 5 (2019). The complaint alleges that each defendant is liable in negligence and gross

 negligence for compensatory damages and separately that punitive damages should

 be awarded. As to the punitive damages claims, we consider whether the complaint

 “gives sufficient notice of events or transactions to allow the adverse party to

 understand the nature and basis for the claim[s] [of punitive damages for willful or

 wanton conduct], to allow him to prepare for trial, and to allow for the application of

 res judicata.” Henry v. Deen, 310 N.C. 75, 85 (1984). We conclude that it does. Because

 willful or wanton conduct is a higher standard than gross negligence, this inquiry

 obviates any need to separately determine whether the complaint adequately states

 a claim for gross negligence. See Estate of Savino, 375 N.C. at 300 (“[W]illful and

 wanton and reckless conduct is still a higher degree of negligence or a greater degree

 of negligence than the negligence of gross negligence . . . .” (quoting Crow v. Ballard,

 263 N.C. 475, 477 (1965)).

¶ 33 In their brief, defendants argue that the allegations in the complaint do not

 rise to the level of “willful or wanton conduct” necessary to sustain a claim for punitive

 damages in the absence of fraud or malice. See N.C.G.S. § 1D-15(a). They argue that

 the complaint contains no allegations creating a factual basis for the “inference that

 NCSU’s employees knew or should have known about the risk of pressurized gas

 build-up in the chiller’s water pipes.” In defendants’ view, the allegations of the

 complaint fail to state a claim for punitive damages because they do not establish

 -21-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 that defendants were on notice that their actions might cause injury.

¶ 34 Defendants went further at oral argument, contending that because the

 allegations in the complaint “at most” support the inference that defendants should

 have known that their conduct could cause injury, the complaint is insufficient to

 state a claim for punitive damages. Defendants argued that the “willful or wanton

 conduct” necessary to establish gross negligence requires actual knowledge of the

 possibility of injury.

¶ 35 As noted above, a claim for punitive damages may be based on allegations of

 fraud, malice, or “[w]illful or wanton conduct.” N.C.G.S. § 1D-15(a). Here, where there

 are no allegations of fraud or malice, the punitive damages claims are based on the

 aggravating factor of willful or wanton conduct. Notice pleading principles are

 applicable to claims for punitive damages. Shugar v. Guill, 304 N.C. 332, 337–38

 (1981). Under those principles, there must be “sufficient information in the complaint

 from which defendant [can] take notice and be apprised of ‘the events and

 transactions which produce the claim to enable [him] to understand the nature of it

 and the basis for it.’ ” Id. at 338 (second alteration in original) (quoting Sutton v.

 Duke, 277 N.C. 94, 104 (1970)). The complaint need not lay out the “detailed and

 specific facts giving rise to punitive damages.” Henry, 310 N.C. at 85 (citing Sutton,

 277 N.C. at 102).

¶ 36 As to each of the six defendants, the complaint alleges that the defendant’s

 -22-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

“acts and/or omissions . . . demonstrated a conscious or intentional disregard or

indifference to the rights and safety of others, including Joe Long, which [that

defendant] knew, or should have known, would be reasonably likely to result in injury

or death and as such constituted willful or wanton conduct.” The “acts and/or

omissions” of each defendant are described as follows:

 a. He improperly drained water from the Carrier
 chiller;

 b. He did not fill the Carrier chiller with glycol,
 ethylene glycol or some other anti-freeze after
 draining water from it;

 c. He left the Carrier chiller outside when he knew or
 should have known there was still water in the
 cooler tubes;

 d. He left the Carrier chiller outside when there was
 water in the cooler tubes when the temperature
 dropped below freezing;

 e. He capped the inlet water pipe and the outlet water
 pipe of the Carrier chiller with metal flanges when
 he knew or should have known the cooler tubes could
 be damaged and the water tubes and pipes could
 become pressurized;

 f. He allowed the inlet water pipe and the outlet water
 pipe of the Carrier chiller to remain capped when he
 knew, or should have known, pressure could build
 up inside the chiller;

 g. He did not consult the labels on the Carrier
 chiller . . . when he shut-down, disconnected,
 drained, or capped the Carrier chiller;

 h. He did not follow the labels . . . when he shut-down,

 -23-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 disconnected, drained, or capped the Carrier chiller;

i. He did not consult the Winter Shutdown
 instructions of the Operating Manual of the Carrier
 chiller . . . when he shut-down, disconnected,
 drained, or capped the Carrier chiller;

j. He did not follow the Winter Shutdown instructions
 of the Operating Manual . . . when he shut-down,
 disconnected, drained, or capped the Carrier chiller;

k. He ordered shut-down, disconnection, draining, and
 capping of the Carrier chiller in the wintertime
 without following the instructions on the labels, the
 Operating Instruction Manual, or otherwise
 exercising reasonable care;

l. He directed shut-down, disconnection, draining, and
 capping of the Carrier chiller in the wintertime
 without following the instructions on the labels, the
 Operating Instruction Manual, or otherwise
 exercising reasonable care;

m. He supervised one or more of the other defendants
 in the shut-down, disconnection, draining, or
 capping of the Carrier chiller in the wintertime
 without following the instructions on the labels, the
 Operating Instruction Manual, or otherwise
 exercising reasonable care;

n. He did not warn Joe Long that the Carrier chiller
 had been shut down in the winter contrary to
 reasonable safe procedures and that there was high
 pressure gas behind the metal flanges;

o. He did not warn anyone with Joe Long’s employer,
 Quate Industrial Service, Inc., that the Carrier
 chiller had been shut down in the winter contrary to
 reasonable safe procedures and that there was high
 pressure gas behind the metal flanges;

 -24-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 p. He failed to exercise reasonable care during winter
 shut-down of the Carrier chiller in such a way that
 the chill water tubes were damaged by freezing and
 allowed to become pressurized and then capped the
 inlet water pipe and the outlet water pipe so that the
 Carrier chiller became ultra-hazardous;

 q. He did not exercise reasonable care to prevent the
 metal flange from becoming exposed to pressure
 from the inside of the chiller;

 r. He was otherwise negligent as will be shown
 through discovery and proven at the trial of this
 action.

¶ 37 As to each defendant, the complaint alleges that the defendant, either

 knowingly or with reckless disregard of the consequences of his actions, left the chiller

 in such a condition that it was likely to seriously injure the next person who came

 along to work on it. The complaint specifically alleges that each defendant knew or

 should have known that the chiller’s tubes would become damaged in cold weather

 (knowledge underscored by notices attached to the chiller), and thereby become

 pressurized. The complaint further alleges that each defendant capped the pipes

 when each defendant knew or should have known that the pipes would become

 pressurized. Moreover, the complaint alleges that each defendant’s actions

 “demonstrated a conscious or intentional disregard or indifference to the rights and

 safety of others, including Joe Long, which [that defendant] knew, or should have

 known, would be reasonably likely to result in injury or death and as such constituted

 willful or wanton conduct.” These allegations were sufficient to put defendants on

 -25-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Opinion of the Court

 notice of the events that the complaint asserts give rise to the claims for punitive

 damages and are sufficient to allow defendants “to understand the nature and basis

 for the claim.” See Henry, 310 N.C. at 85 (citing Sutton, 277 N.C. at 102). As a result,

 the complaint states claims for punitive damages sufficient to survive a motion to

 dismiss pursuant to Rule 12(b)(6).

 III. Conclusion

¶ 38 The complaint in this case makes clear that it is a suit brought against State

 employees in their individual capacities. Under our prior decisions, it is not subject

 to the doctrine of sovereign immunity. The State’s voluntary election to defend State

 employees for conduct performed in the course of their employment does not change

 this analysis, nor does the State’s payment of judgments entered against such

 employees. The complaint adequately alleges facts from which, if true, a jury could

 find that Mr. Long’s injury was proximately caused by defendants’ conduct and

 further alleges facts sufficient to state claims for punitive damages against

 defendants. As a result, we affirm the decision of the Court of Appeals.

 AFFIRMED.

 -26-
 Justice BERGER dissenting.

¶ 39 The State can only act through its officers and employees. The question

 presented is whether defendants were acting in their official capacity or individually.

 The statute waiving sovereign immunity grants the Industrial Commission exclusive

 jurisdiction to make this determination. The majority’s holding removes this

 responsibility from the Industrial Commission and places it in the hands of a plaintiff,

 which could lead to double recovery by allowing plaintiff to pursue the same claim,

 for the same conduct, and the same injury, in both the Industrial Commission and

 superior court. Because the complaint in this case, when fully considered, indicates

 that plaintiff is suing defendants in their official capacities – the only capacity in

 which they performed their task – the Industrial Commission has exclusive

 jurisdiction over this case. Furthermore, the majority’s holding constitutes a drastic

 departure from our requirements to plead facts sufficient to establish both proximate

 cause and willful or wanton conduct. Therefore, I respectfully dissent.

¶ 40 “Sovereign immunity is a legal principle which states in its broadest terms that

 the sovereign will not be subject to any form of judicial action without its express

 consent.” Guthrie v. N.C. State Ports Auth., 307 N.C. 522, 535, 299 S.E.2d 618, 625

 (1983) (quoting 12 Wake Forest L. Rev. 1082, 1083 (1976)). “It has long been

 established that an action cannot be maintained against the State of North Carolina

 or an agency thereof unless it consents to be sued or upon its waiver of immunity, and

 that this immunity is absolute and unqualified.” Guthrie, 307 N.C. at 534, 299 S.E.2d
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 at 625 (citations omitted) (emphasis in original) (“The State has absolute immunity

 in tort actions . . . except insofar as it has consented to be sued or otherwise expressly

 waived its immunity.”). Since the State can only act through individuals, its officers

 and employees enjoy the protection of the State’s sovereign immunity as they perform

 their official duties.

¶ 41 In N.C.G.S. § 143-291, the General Assembly enacted the State Tort Claims

 Act (STCA) which partially waived the State’s sovereign immunity in tort actions “to

 enlarge the rights and remedies of a person injured by the actionable negligence of

 an employee of a State agency while acting in the course of his employment.” Meyer

 v. Walls, 347 N.C. 97, 109, 489 S.E.2d 880, 887 (1997) (quoting Wirth v. Bracey, 258

 N.C. 505, 507–08, 128 S.E.2d 810, 813 (1963)). Subsection 143-291(a) states in

 relevant part:

 The North Carolina Industrial Commission is hereby
 constituted a court for the purpose of hearing and passing
 upon tort claims against the State Board of Education, the
 Board of Transportation, and all other departments,
 institutions and agencies of the State. The Industrial
 Commission shall determine whether or not each individual
 claim arose as a result of the negligence of any officer,
 employee, involuntary servant or agent of the State while
 acting within the scope of his office, employment, service,
 agency or authority, under circumstances where the State
 of North Carolina, if a private person, would be liable to the
 claimant in accordance with the laws of North Carolina.

 N.C.G.S. § 143-291(a) (2019) (emphases added).

¶ 42 A plain reading of N.C.G.S. § 143-291(a) makes it clear that the Industrial

 -2-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 Commission maintains exclusive jurisdiction over tort claims against “the State

 Board of Education, the Board of Transportation, and all other departments,

 institutions and agencies of the State.” Id.; see Meyer, 347 N.C. at 105, 489 S.E.2d at

 884 (“The only claim authorized by the Tort Claims Act is a claim against the State

 agency. True, recovery, if any, must be based upon the actionable negligence of an

 employee of such agency while acting within the scope of his employment.” (quoting

 Wirth, 258 N.C. at 507–08, 128 S.E.2d at 813)).

¶ 43 Here, plaintiff sued defendants as employees of North Carolina State

 University (NCSU). According to the majority, a plaintiff may sue a defendant in

 their individual capacity in superior court for ordinary negligence that arose during

 the course and scope of their employment. However, the distinction between official

 capacity and individual capacity conflicts with both the concept of waiver of sovereign

 immunity and the plain language of N.C.G.S. § 143-291(a).1

¶ 44 First, N.C.G.S. § 143-291(a) states that the Industrial Commission “shall

 determine whether or not each individual claim arose as a result of the negligence of

 any officer, employee, involuntary servant or agent of the State while acting within

 1 We readily acknowledge that our precedent in this area is less than clear and that

 there has been little discussion on the purpose of the STCA, the plain language of N.C.G.S. §
 143-291(a), or the exclusive jurisdiction of the Industrial Commission to make course and
 scope determinations. The approach taken by the majority, however, is inconsistent with the
 jurisdiction vested in the Industrial Commission, the limited waiver of the State’s sovereign
 immunity, and the plain language of N.C.G.S. § 143-291(a).

 -3-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 the scope of his office, employment, service, agency or authority[.]” N.C.G.S. § 143-

 291(a). The plain language of N.C.G.S. § 143-291(a) makes it clear that the Industrial

 Commission is vested with the power to determine whether the negligence of

 employees of the State occurred during the course and scope of their employment.

 However, under the majority’s reasoning, a plaintiff is allowed to make this

 determination simply by including the words “in their individual capacity” in the

 complaint. In effect, this allows a plaintiff to take away the Industrial Commission’s

 jurisdiction, while at the same time creating jurisdiction in superior court.2

¶ 45 Second, because the State can only act through officers and employees, the

 distinction between official capacity and individual capacity conflicts with the concept

 of waiver of the State’s sovereign immunity. The STCA narrowly waived the State’s

 sovereign immunity for ordinary negligence of a State employee that occurred within

 2 Allowing plaintiffs to create jurisdiction in superior court by simply using the words

 “in their individual capacity” in the complaint implicates N.C.G.S. § 143-300.3. N.C.G.S. §
 143-300.3 states in relevant part, “upon request of an employee or former employee, the State
 may provide for the defense of any civil or criminal action or proceeding brought against him
 in his official or individual capacity, or both, on account of an act done or omission made in
 the scope and course of his employment as a State employee.” N.C.G.S. § 143-300.3 (2019).
 While the majority is correct that the State’s decision to pay is discretionary, this
 discretionary determination has far reaching consequences. If the State chooses not to
 provide for the defense of a State employee acting within the course and scope of their
 employment, State employees could potentially lose their homes and other assets simply
 because a plaintiff included the words “in their individual capacity” in the complaint. On the
 other hand, if the State chooses to defend an employee, a plaintiff who uses the words “in
 their individual capacity” has, in essence, circumvented the Industrial Commission’s
 jurisdiction, and is now bringing a suit against the State in superior court, creating the
 potential of a double recovery for the same injury.

 -4-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 the course and scope of their employment. In this limited waiver of sovereign

 immunity, the STCA gave the Industrial Commission exclusive jurisdiction over

 these types of cases. See N.C.G.S. § 143-291(a) (“The North Carolina Industrial

 Commission is hereby constituted a court for the purpose of hearing and passing upon

 tort claims against the State Board of Education, the Board of Transportation, and

 all other departments, institutions and agencies of the State.”). To allow a plaintiff

 to bring suit in superior court against an employee of the State for ordinary

 negligence that arose during the course and scope of their employment contravenes

 the purpose of the STCA.

¶ 46 This situation is similar to cases arising in the workers’ compensation context.

 This Court has stated that

 [t]he North Carolina Industrial Commission has a special
 or limited jurisdiction created by statute, and confined to
 its terms. Viewed as a court, it is one of limited jurisdiction,
 and it is a universal rule of law that parties cannot, by
 consent, give a court, as such, jurisdiction over subject
 matter of which it would otherwise not have jurisdiction.
 Jurisdiction in this sense cannot be obtained by consent of
 the parties, waiver, or estoppel.

 Hart v. Thomasville Motors, Inc., 244 N.C. 84, 88, 92 S.E.2d 673, 676 (1956) (citations

 omitted). “The Workmen’s Compensation Act, in [N.C.]G.S. [§] 97-9, provides that

 the sole remedy for a covered employee against his employer or those conducting the

 employer’s business is to seek compensation under the Act. Thus, an employee

 subject to the Act whose injuries arise out of and in the course of his employment may

 -5-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 not maintain” an action for negligence. Strickland v. King, 293 N.C. 731, 733, 239

 S.E.2d 243, 244 (1977) (citation omitted) (emphasis added). However, in Pleasant v.

 Johnson, 312 N.C. 710, 325 S.E.2d 244 (1985), we held that “the Workers’

 Compensation Act does not shield a co-employee from common law liability for willful,

 wanton and reckless negligence.” Id. at 716, 325 S.E.2d at 249.

¶ 47 Thus, in the realm of workers’ compensation, a plaintiff cannot create

 jurisdiction and bring a common law negligence action in superior court unless they

 can show that a defendant’s actions rose to the level of willful and wanton conduct.

 Turning to this case, because N.C.G.S. § 143-291(a) gives the Industrial Commission

 exclusive jurisdiction over claims against the State and vests the power to determine

 whether alleged negligence occurred during the course and scope of a defendant’s

 employment, a plaintiff should not be allowed to create jurisdiction in superior court

 merely by claiming they are suing a defendant “in their individual capacity.”

¶ 48 Nevertheless, even assuming that plaintiff can bring this action in superior

 court, plaintiff’s complaint shows that she is suing defendants in their official

 capacities.

 In ruling on the individual defendants’ motions to
 dismiss, the first step is to determine whether the
 complaint seeks recovery from the individuals in their
 official or individual capacities, or both. . . . A suit against
 a defendant in his individual capacity means that the
 plaintiff seeks recovery from the defendant directly; a suit
 against a defendant in his official capacity means that the
 plaintiff seeks recovery from the entity of which the public

 -6-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 servant defendant is an agent.

 Meyer, 347 N.C. at 110, 489 S.E.2d at 887; see also White v. Trew, 366 N.C. 360, 363,

 736 S.E.2d 166, 168 (2013) (“A suit against a public official in his official capacity ‘is

 a suit against the State.’ ” (quoting Harwood v. Johnson, 326 N.C. 231, 238, 388

 S.E.2d 439, 443 (1990))).

¶ 49 When determining whether a defendant is being sued in their official or

 individual capacity

 [t]he crucial question . . . is the nature of the relief sought,
 not the nature of the act or omission alleged. If the plaintiff
 seeks an injunction requiring the defendant to take an
 action involving the exercise of a governmental power, the
 defendant is named in an official capacity. If money
 damages are sought, the court must ascertain whether the
 complaint indicates that the damages are sought from the
 government or from the pocket of the individual defendant.
 If the former, it is an official-capacity claim; if the latter, it
 is an individual-capacity claim; and if it is both, then the
 claims proceed in both capacities.

 Mullis v. Sechrest, 347 N.C. 548, 552, 495 S.E.2d 721, 723 (1998) (emphasis added)

 (quoting Meyer, 347 N.C. at 110, 489 S.E.2d at 887).

¶ 50 The majority contends that it is “abundantly clear from the complaint that

 defendants are being sued in their individual capacities” because the caption and

 prayer for relief state that plaintiff is suing defendants in their individual capacities.

 While it is true that “including the words . . . ‘in his individual capacity’ after a

 defendant’s name obviously clarifies the defendant’s status[,]” Mullis makes clear

 -7-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 that “the allegations as to the extent of liability claimed should provide further

 evidence of capacity.” Mullis, 347 N.C. at 554, 495 S.E.2d at 724–25. Therefore, the

 allegations in the complaint itself must provide further evidence that plaintiff is

 suing defendants in their individual capacities.

¶ 51 By the majority’s reasoning, plaintiffs who simply assert that they are suing

 defendants in their individual capacity can always bring suit in superior court. As

 illustrated above, this reasoning would allow plaintiffs to circumvent the Industrial

 Commission’s jurisdiction to “determine whether or not each individual claim arose

 as a result of the negligence of any officer, employee, involuntary servant or agent of

 the State while acting within the scope of his office, employment, service, agency or

 authority[.]” N.C.G.S. § 143-291(a). If the majority is correct, any plaintiff may strip

 the Industrial Commission of its jurisdiction and create jurisdiction in superior court

 by simply adding “in their individual capacity” to their complaint. This reasoning

 discards the “ ‘crucial question’ ” outlined in Mullis: whether monetary damages are

 being “ ‘sought from the government or from the pocket of the individual defendant.’ ”

 Mullis, 347 N.C. at 552, 495 S.E.2d at 723 (quoting Meyer, 347 N.C. at 110, 489 S.E.2d

 at 887). Simply put, the capacity listed by a plaintiff in their complaint is not

 dispositive.

¶ 52 Further, the majority relies on Mullis for the proposition that this Court can

 only examine the course of proceedings when “the complaint does not clearly specify

 -8-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 whether the defendants are being sued in their individual or official capacities.”

 However, nowhere in Mullis did this Court claim that when a complaint clearly states

 the capacity in which the defendant is being sued, we are barred from looking to the

 “course of proceedings.”

¶ 53 Rather, this Court stated “[t]he ‘course of proceedings’ . . . typically will indicate

 the nature of the liability sought to be imposed.” Mullis, 347 N.C. at 552, 495 S.E.2d

 at 723 (alterations in original) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14

 (1985)). If this Court is barred from looking to the course of proceedings, any plaintiff

 can circumvent the Industrial Commission by merely listing the defendants as being

 sued in their individual capacities in the complaint. Thus, the course of proceedings

 is helpful in determining the capacity in which a defendant is being sued, regardless

 of the capacity alleged in a complaint by an interested party.

¶ 54 Lastly, Mullis makes it clear that,

 it is often not clear in which capacity the plaintiff seeks to
 sue the defendant. In such cases it is appropriate for the
 court to either look to the allegations contained in the
 complaint to determine plaintiff’s intentions or assume
 that the plaintiff meant to bring the action against the
 defendant in his or her official capacity.

 Mullis, 347 N.C. at 552, 495 S.E.2d at 723 (quoting Anita R. Brown-Graham & Jeffrey

 S. Koeze, Immunity from Personal Liability under State Law for Public Officials and

 Employees: An Update, Loc. Gov’t L. Bull. 67, at 7 (Inst. Of Gov’t, Univ. of N.C. at

 Chapel Hill), Apr. 1995). Because the capacity listed in a complaint is not dispositive,

 -9-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 this Court should consider the allegations in the complaint when making a capacity

 determination.

¶ 55 Therefore, “our analysis begins with answering the ‘crucial question’ of what

 type of relief is sought.” Mullis, 347 N.C. at 552, 495 S.E.2d at 723. Here, plaintiff

 is seeking to recover monetary damages. As illustrated above, “[i]f money damages

 are sought, the court must ascertain whether the complaint indicates that the

 damages are sought from the government or from the pocket of the individual

 defendant.” Id. (quoting Meyer, 347 N.C. at 110, 489 S.E.2d at 887). To make this

 determination, it is appropriate for us to consider the allegations contained in the

 complaint and the course of proceedings to determine whether defendants are being

 sued in their official or individual capacities.

¶ 56 Here, the allegations in the complaint and the course of the proceedings

 indicate that plaintiff is suing defendants in their official capacities.

¶ 57 First, plaintiff alleges that “[a]t all times pertinent to this action, each

 defendant was employed by NCSU.” This establishes that defendants are agents of

 NCSU. See Mullis, 347 N.C. at 553, 495 S.E.2d at 724 (finding that because the

 plaintiffs alleged that the defendant was an employee of the Charlotte-Mecklenburg

 Board of Education “[t]his allegation establishes that defendant . . . is an agent of

 defendant Board”). Next, plaintiff alleges that the tasks to drain and maintenance

 the water pipes on the chiller “were done pursuant to NCSU Facilities Operations

 -10-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 Work Order # 17-037848.” Specifically, the work order states, “Please Drain and

 Secure Carrier Chiller For Relocation.” Nowhere in the work order is it stated that

 defendants were required to refill the chiller with antifreeze upon completion of their

 maintenance. Therefore, the substance of plaintiff’s allegations show that the alleged

 negligence arose from defendants carrying out a work order directed by NCSU.

¶ 58 This situation is similar to this Court’s analysis in Mullis. In Mullis this Court

 stated

 plaintiffs set forth only one claim for relief in their
 complaint. In the beginning of their claim for relief,
 plaintiffs allege that “the Defendant Charlotte[–
 ]Mecklenburg School System provided, permitted and
 directed the operation of a Rockwell tilting arbor saw,
 model # 34–399 in its industrial arts class.” Later in the
 complaint, plaintiffs specifically allege that defendant
 Sechrest negligently failed to give reasonable or adequate
 instructions or warnings concerning the dangers inherent
 in the use of the saw and provided a machine that was
 unsafe. However, we note that it was necessary to allege
 defendant Sechrest’s negligence in the complaint because
 he was acting as an agent of defendant Board in performing
 his duties. The fact that there is only one claim for relief is
 also indicative of plaintiffs’ intention to sue defendant
 Sechrest in his official capacity, as an agent of defendant
 Board.

 Mullis, 347 N.C. at 553, 495 S.E.2d at 724 (alteration in original) (citation omitted).

 Here, plaintiff’s only real claim for relief is that defendants were negligent in carrying

 out a work order issued by NCSU. While plaintiff alleged defendants’ negligence in

 failing to properly refill the chiller and warn Mr. Long, this was necessary to allege

 -11-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 defendants’ negligence in the complaint because these employees were acting as

 agents of NCSU. See id. (“[I]t [is] necessary to allege defendant[’s] . . . negligence in

 the complaint because he was acting as an agent of defendant Board in performing

 his duties.”). In essence, there is only one claim for relief because it is readily

 apparent that plaintiff was suing defendants in their official capacities for the work

 performed pursuant to the work order.

¶ 59 Further, the fact that plaintiff’s complaints in the Industrial Commission and

 superior court are largely duplicative is indicative that plaintiff is suing defendants

 in their official capacities. In both complaints, plaintiff alleges that defendants failed

 to properly follow protocols when performing maintenance on the chiller before

 moving it outside, that they negligently put metal flanges on the ends of the water

 lines, and that they failed to warn Mr. Long of their failure to follow protocol. The

 only major difference between the complaints is that the Industrial Commission

 complaint listed NCSU and “John Doe” as defendants and the superior court

 complaint listed defendants as individuals. As illustrated above, a plaintiff should

 not be able to circumvent the Industrial Commission’s jurisdiction and create

 jurisdiction in superior court by simply alleging they are suing defendants in their

 individual capacities. Accordingly, the duplicative nature of plaintiff’s complaints

 further illustrates that this suit is against defendants in their official capacities.

 -12-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

¶ 60 Thus, “the [allegations in the] complaint, along with the course of proceedings

 in the present case,” indicate that this case is really an official-capacity claim couched

 under the heading of an individual capacity suit. Mullis, 347 N.C. at 554, 495 S.E.2d

 at 725. As such, this suit is effectively one against the State. See White, 366 N.C. at

 363, 736 S.E.2d at 168 (“A suit against a public official in his official capacity ‘is a suit

 against the State.’ ” (quoting Harwood, 326 N.C. at 238, 388 S.E.2d at 443)). Thus,

 the Industrial Commission has exclusive jurisdiction to resolve this dispute, and

 plaintiff should be precluded from bringing this action in superior court.

¶ 61 Nevertheless, even assuming plaintiff’s suit was against defendants in their

 individual capacity and the superior court had jurisdiction to hear it, plaintiff has

 failed to allege facts sufficient to show that defendants’ actions were the proximate

 cause of Mr. Long’s injuries. Plaintiff also failed to allege facts sufficient to state a

 claim for punitive damages.

 This Court reviews a trial court’s order on a motion to
 dismiss de novo and considers “whether the allegations of
 the complaint, if treated as true, are sufficient to state a
 claim upon which relief can be granted under some legal
 theory[.]”

 Cheryl Lloyd Humphrey Land Inv. Co., LLC v. Resco Prods., Inc., 2021-NCSC-56, ¶ 8

 (citation omitted) (quoting Coley v. State, 360 N.C. 493, 494–95, 631 S.E.2d 121, 123

 (2006)).

 Dismissal under Rule 12(b)(6) is proper when one of the
 following three conditions is satisfied: (1) the complaint on

 -13-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 its face reveals that no law supports the plaintiff’s claim;
 (2) the complaint on its face reveals the absence of facts
 sufficient to make a good claim; or (3) the complaint
 discloses some fact that necessarily defeats the plaintiff’s
 claim.

 Id. (citation and quotation marks omitted).

 An allegation of negligence must be sufficiently specific to
 give information of the particular acts complained of; a
 general allegation without such particularity does not set
 out the nature of plaintiff’s demand sufficiently to enable
 the defendant to prepare his defense.

 The complaint must show that the particular facts
 charged as negligence were the efficient and proximate
 cause, or one of such causes, of the injury of which the
 plaintiff complains.

 Stamey v. Rutherfordton Elec. Membership Corp., 247 N.C. 640, 645, 101 S.E.2d 814,

 818 (1958) (cleaned up).

¶ 62 This Court has stated

 [t]he fact that the defendant has been guilty of negligence,
 followed by an injury, does not make him liable for that
 injury, which is sought to be referred to the negligence,
 unless the connection of cause and effect is established; and
 the negligent act of the defendant must not only be the
 cause, but the proximate cause, of the injury. The burden
 was therefore upon the plaintiff to show that defendant’s
 alleged negligence proximately caused his intestate’s
 death, and the proof should have been of such a character
 as reasonably to warrant the inference of the fact required
 to be established, and not merely sufficient to raise a
 surmise or conjecture as to the existence of the essential fact.

 Byrd v. S. Express Co., 139 N.C. 273, 275, 51 S.E. 851, 851–52 (1905) (emphasis

 added) (citation omitted). In defining proximate cause, we have said

 -14-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 [p]roximate cause is a cause which in natural and
 continuous sequence, unbroken by any new and
 independent cause, produced the plaintiff’s injuries, and
 without which the injuries would not have occurred, and
 one from which a person of ordinary prudence could have
 reasonably foreseen that such a result, or consequences of
 a generally injurious nature, was probable under all the
 facts as they existed. Foreseeability is thus a requisite of
 proximate cause, which is, in turn, a requisite for
 actionable negligence.

 Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 233, 311 S.E.2d 559, 565

 (1984) (emphasis added) (citations omitted).

 To establish foreseeability, the plaintiff must prove that
 defendant, in the exercise of reasonable care, might have
 foreseen that its actions would cause some injury. The
 defendant must exercise reasonable prevision in order to
 avoid liability. The law does not require a defendant to
 anticipate events which are merely possible but only those
 which are reasonably foreseeable.

 Bolkhir v. N.C. State Univ., 321 N.C. 706, 710, 365 S.E.2d 898, 901 (1988) (cleaned

 up) (emphasis added). Further, “[p]roximate cause is an inference of fact to be drawn

 from other facts and circumstances.” Hairston, 310 N.C. at 234, 311 S.E.2d at 566.

¶ 63 As an initial matter, the majority diminishes the pleading requirements to

 sufficiently allege proximate cause. In her complaint, plaintiff asserted that

 “[defendants] capped the inlet water pipe and the outlet water pipe of the Carrier

 chiller with metal flanges when [they] knew or should have known the cooler tubes

 could be damaged and the water tubes and pipes could become pressurized[.]”

 Additionally, plaintiff alleged that “[defendants] allowed the inlet water pipe and the

 -15-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 outlet water pipe of the Carrier chiller to remain capped when [they] knew, or should

 have known, pressure could build up inside the chiller[.]” However, outside of a

 cursory allegation that defendants’ negligence was a “direct and proximate result” of

 Mr. Long’s injuries, plaintiff failed to adequately allege that the foreseeable

 consequence of this negligence was that the chiller would pressurize, explode, and

 blow the metal flange into Mr. Long causing injury.

¶ 64 As the majority notes, a sign on the chiller contained a warning indicating that

 it was “not possible to drain all water” from the chiller and that the chiller “must be

 drained and refilled with” antifreeze solution “[f]or freeze protection during shut-

 down.” Similarly, the chiller’s operating manual instructed that the chiller should be

 filled with antifreeze to “prevent freeze-up damage to the cooler tubes[.]” It appears

 that the majority is correct that defendants did not put antifreeze into the chiller.

 However, nothing in the work order or on the labels contained on the outside of the

 chiller mentioned that failing to refill the chiller with antifreeze would create a

 possibility of a pressurized buildup that could cause injury. In fact, the only warning

 mentioned on the labels was that failure to fill the chiller with antifreeze could cause

 “damage to the cooler tubes.” Thus, the foreseeable consequence of failing to follow

 the chiller’s warning labels is damage to the machinery itself.

¶ 65 Accordingly, plaintiff has failed allege facts sufficient to establish that

 defendants “in the exercise of reasonable care, might have foreseen that [their]

 -16-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 actions” in failing to refill the chiller with antifreeze would cause some injury.

 Bolkhir, 321 N.C. at 710, 365 S.E.2d at 901. Simply put, it was not reasonably

 foreseeable that, in the face of the instructions on the work order and the labels on

 the chiller, defendants’ actions would cause injury to Mr. Long. Because “[t]he law

 does not require a defendant to anticipate events which are merely possible but only

 those which are reasonably foreseeable[,]” id., plaintiff has failed allege facts

 sufficient to establish that defendants’ actions were the proximate cause of Mr. Long’s

 injuries.

¶ 66 Lastly, the majority’s holding that plaintiff adequately alleged willful or

 wanton conduct to bring a claim for punitive damages constitutes a dangerous

 reduction of the pleading requirements necessary for punitive damages in this State.

 Section 1D-15(a) of our General Statutes states that

 [p]unitive damages may be awarded only if the claimant
 proves that the defendant is liable for compensatory
 damages and that one of the following aggravating factors
 was present and was related to the injury for which
 compensatory damages were awarded:

 (1) Fraud.

 (2) Malice.

 (3) Willful or wanton conduct.

 N.C.G.S. § 1D-15(a) (2019). Section 1D-5 defines “[w]illful or wanton conduct” as

 the conscious and intentional disregard of and indifference
 to the rights and safety of others, which the defendant
 knows or should know is reasonably likely to result in

 -17-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 injury, damage, or other harm. “Willful or wanton conduct”
 means more than gross negligence.

 N.C.G.S. § 1D-5(7) (2019). “[T]his Court held that it was not sufficient to state a cause

 of action for punitive damages to allege that the defendant’s conduct was ‘willful,

 wanton and gross’ . . . . ” Shugar v. Guill, 304 N.C. 332, 336, 283 S.E.2d 507, 509

 (1981) (quoting Clemmons v. Life Ins. Co. of Ga., 274 N.C. 416, 424, 163 S.E.2d 761,

 767 (1968)). Rather, a “plaintiff’s complaint must allege facts or elements showing

 the aggravating circumstances which would justify the award of punitive damages.”

 Shugar, 304 N.C. at 336, 283 S.E.2d at 510 (citation omitted).

¶ 67 Here, plaintiff alleged “[s]ome or all of the acts and/or omissions of defendant[s]

 . . . constituted gross negligence” and that “[s]ome or all of the acts and/or omissions

 of defendant[s] . . . demonstrated a conscious or intentional disregard or indifference

 to the rights and safety of others, including Joe Long, which defendant[s] . . . knew,

 or should have known, would be reasonably likely to result in injury or death and as

 such constituted willful or wanton conduct.” Outside of these allegations, plaintiff

 failed to set out the facts and circumstances to illustrate that defendants’ actions

 constituted a “conscious and intentional disregard of and indifference to the rights

 and safety of others.” Hinson v. Dawson, 244 N.C. 23, 28, 92 S.E.2d 393, 397 (1956).

 Plaintiff’s complaint, at most, alleges that defendants negligently failed to follow the

 warning signs on the chiller which ultimately lead to Mr. Long’s injuries. Nothing in

 the complaint points to any conscious disregard for the safety of others to rise to the

 -18-
 ESTATE OF LONG V. FOWLER

 2021-NCSC-81

 Berger, J., dissenting

 level of willful or wanton conduct. As such, plaintiff failed to adequately allege willful

 or wanton conduct.

¶ 68 The allegations in the complaint, coupled with the course of proceedings, make

 it clear that plaintiff is suing defendants in their official capacities, and the Industrial

 Commission has exclusive jurisdiction over this case. Even assuming the superior

 court had jurisdiction to hear this case, plaintiff has failed to allege facts sufficient to

 show that defendants’ conduct proximately caused Mr. Long’s injuries. Plaintiff has

 also failed to state a claim for punitive damages. Therefore, the decision of the Court

 of Appeals should be reversed, and I respectfully dissent from the majority’s opinion.

 Chief Justice NEWBY and Justice BARRINGER join in this dissenting

 opinion.

 -19-